1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERICA LORRAINE SAYLER,** | )    **NO. CV 14-7957-KLS** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff filed a Complaint on October 20, 2014, seeking review of the denial of her application for disability insurance ("DIB") and Supplemental Security Income ("SSI") benefits. On August 4, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either ordering the payment of benefits or remanding the matter for further administrative proceedings. (Joint Stip. at 12.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 48.) On August 12, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United

States Magistrate Judge.  (Dkt. Nos. 22-23.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 17, 2011, plaintiff, who was born on January 2, 1982, protectively filed applications for a period of disability, DIB, and SSI.  (Administrative Record ("A.R.") 207-14.)  Plaintiff alleged disability commencing June 20, 2006, due to arthritis, problems with her leg and heel, depression, and anxiety.  (*Id.* 207, 209, 230.)  Plaintiff previously worked as a sound engineer.  (*Id.* 231.)  The Commissioner denied plaintiff's applications initially (*id.* 90-91) and on reconsideration (*id.*134-44).  On December 7, 2012, plaintiff requested a hearing.  (*Id.* 146.)  On March 3, 2014, Administrative Law Judge Mary L. Everstine ("ALJ") held a hearing and tried unsuccessfully to reach plaintiff, who was unrepresented at the time and "banned from in-person appearing by the Social Security Administration," by phone to give her a chance to testify.[1]  (*Id.* 45-46.)  Sharon Spaventa, a vocational expert ("VE"), testified in person.  (*Id.* 47-49.)  On March 21, 2014, the ALJ issued an unfavorable decision, denying plaintiff's claims for DIB and SSI.  (*Id.* 24-33.)  On August 15, 2014, the Appeals Council denied plaintiff's request for review.  (*Id.* 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2010 and had not engaged in substantial gainful activity from the alleged onset date of June 20, 2006.  (A.R.  27.)  The ALJ further found that plaintiff had the following severe impairments:  "mild to moderate degenerative disc disease of the cervical

---

[1]    The ALJ added that "[plaintiff's] attorney had been fired by [plaintiff] at the prior hearing that was scheduled on January 6th of 2014.  At that time, [plaintiff] was not available by telephone . . . Therefore, [the ALJ] gave one additional continuance to reschedule this."  (A.R. 46.)

spine, status post fracture of the left tibia and talus, and obesity." (*Id.*)  The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  (*Id.* 30)  The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform "light work" except as follows:  "[S]he is limited to occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, and crawling.  She is precluded from climbing ladders, ropes, or scaffolds.  She is limited to jobs involving predictable routines and usual workplace demands." (*Id.*)  The ALJ found that plaintiff had no past relevant work but, in the light of the VE's testimony and plaintiff's age, education, work experience, and RFC, was able to perform work that exists in significant numbers in the national economy, such as the jobs of housekeeper (DOT 323.687-014) and retail marker (DOT 209.587-034).   (*Id.* 31-32.)   The ALJ therefore found that plaintiff was not disabled. (*Id.* 32-33.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, __ F.3d __, 2015 WL 4620123, at *4 (9th Cir. Aug. 4, 2015) (internal citations omitted).
.

## DISCUSSION

Plaintiff alleges the following three errors: (1) the ALJ erred in finding that plaintiff did not suffer from a severe mental impairment (Joint Stip. at 4-12); (2) the ALJ improperly evaluated the medical opinions of the examining physician Dr. Todd Nguyen, D.O., the reviewing physician D. Funkenstein, M.D., and the examining psychologist Richard Palmer, Ph.D. (*id.* at 4, 22-28); and (3) the ALJ improperly evaluated plaintiff's subjective symptom allegations (*id.* at 4, 34-37).

**I.      The ALJ Erred In Finding That Plaintiff Did Not Suffer From A Severe Mental Impairment.**

In her application for benefits, plaintiff claimed disability on the basis of depression and anxiety, in addition to her physical impairments.  However, the ALJ determined that plaintiff did not have a mental impairment that satisfied the Commissioner's definition of "severe" at step two of the sequential analysis.  To support her decision, the ALJ observed that plaintiff's treatment records from Ventura County Medical Center, Los Robles Hospital, and Kaiser Permanente did not reflect any mental health treatment.  (A.R. 27-28.)  The ALJ acknowledged the findings of the examining psychologist, Dr. Richard Palmer, who concluded that plaintiff suffered major depressive disorder and panic disorder with agoraphobia, assessed a GAF score of 54, indicating moderate impairment in multiple areas, and opined that plaintiff's mental health symptoms would not abate within a year.  (*Id.* 28-29.)  However, the ALJ discounted Dr. Palmer's opinion because there was no mental health evidence to support Dr. Palmer's conclusion that plaintiff's mental health symptoms would not abate within a year and Dr. Palmer's mental status examination of plaintiff was "essentially unremarkable."  (*Id.* 29.)  The ALJ concluded that Dr. Palmer based his opinion solely on plaintiff's subjective complaints.  (*Id.*)

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*:  "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521, 416.921.  "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).  If "an adjudicator is unable to

determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

Further, in order to reject an examining physician's opinion at any step in the sequential analysis, "the ALJ has to give clear and convincing reasons." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

Given these standards, the ALJ's reasoning at step 2 of the sequential analysis fell short of what the law requires. In *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the Ninth Circuit wrote that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." The Court explained:

It is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. Thus, the fact that [plaintiff] may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the examining physician's] assessment of [plaintiff's] condition is inaccurate.

*Nguyen*, 100 F.3d at 1465; *see also Regennitter*, 166 F.3d at 1299-1300 ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (citations omitted).

The Ninth Circuit's admonition is particularly significant in this instance because plaintiff told Dr. Palmer that she recognized she needed treatment for her "fear of going outside her home" and "constant feeling of dread and generalized anxiety" but she had been "too depressed" to keep the appointments she made with mental health professionals. (A.R. 351.) Accordingly, plaintiff's failure to seek treatment for her mental health issues is not a legitimate reason supported by substantial evidence for the ALJ's decision to discount Dr. Palmer's assessment and conclude that plaintiff did not have a "severe" mental impairment at step 2 of the analysis.

Further, the ALJ's characterization of Dr. Palmer's mental status examination as "essentially unremarkable" is belied by Dr. Palmer's report. Dr. Palmer stated that plaintiff "presented in a depressed manner" and "her facial expression was distressed." (A.R. 350.) Plaintiff reported being "irritable, impatient, and short tempered," feeling "helpless and angry" with "a fear of going outside her home," and experiencing a "constant feeling of dread and generalized anxiety." (*Id.* 350-51.) In the portion of his report entitled "Mental Status Examination," Dr. Palmer wrote that plaintiff's mood was "depressed" and "anxious" and her affect was "congruent with mood." (*Id.* 353.) Finally, at the end of his report, Dr. Palmer wrote:

> Given [plaintiff's] psychiatric and treatment history and results of this evaluation, it appears that the mental health symptoms may be chronic in nature. Given the current diagnosis and past mental health involvement, it

appears that [plaintiff's] current mental health condition <u>will not abate on its own within a one year period</u>.  [Plaintiff] may benefit from starting therapy and starting psychiatric medication to address and manage current mental health symptoms.

(A.R. 354) (emphasis added).[2]  Accordingly, the ALJ erred in discounting Dr. Palmer's opinion at step 2 of the analysis on the grounds that his examination of plaintiff was "unremarkable" and his conclusions unsupported.

Thus, the record as a whole does not "clearly establish" that plaintiff's mental impairments do not significantly limit her ability to perform basic work activities.  To the contrary, the opinion of the only licensed psychologist to examine plaintiff strongly suggests that plaintiff's mental impairments *do* significantly limit her ability to perform a number of basic work activities, and the ALJ failed to articulate legitimate reasons supported by substantial evidence for rejecting this opinion.  The Court also notes that it appears that plaintiff's mental impairments may have hindered her participation in this case, because she failed to appear telephonically at either hearing despite numerous calls from the ALJ and "was banned from in-person appearing by the Social Security Administration."  (A.R. 46.) Thus, the matter must be remanded for further proceedings to determine whether plaintiff's mental impairments are severe at step 2 of the sequential analysis.

//
//
//
//

---

[2]        As plaintiff points out, Dr. Palmer "was contracted by the Social Security Administration to perform the consultative examination[.]" (Joint Stip. at 12.) This fact further undermines the ALJ's apparent suggestion that Dr. Palmer was somehow biased in plaintiff's favor such that he gave undue credit to plaintiff's subjective complaints.  This Court finds nothing in the record to suggest any such bias on the part of Dr. Palmer. *See e.g., Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) ("While the Secretary 'may introduce evidence of actual improprieties,' no such evidence exists here.") (internal citation omitted).

**II.      The ALJ Improperly Evaluated The Medical Opinions Of Examining Physician Dr. Nguyen And Reviewing Physician Dr. Funkenstein.**

Plaintiff next contends that, in addition to improperly evaluating Dr. Palmer's opinion, the ALJ improperly evaluated the opinions of Dr. Nguyen, who performed a consultative orthopedic examination of plaintiff, and the reviewing physician, Dr. Funkenstein.  (*See* Joint Stip. at 22-28.)

**A.  The ALJ Improperly Discounted The Opinion Of Dr. Nguyen.**

On March 24, 2012, Dr. Nguyen, a board certified doctor of orthopedic medicine, performed a consultative examination of plaintiff.  (A.R. 346-49.)   Based on his examination, Dr. Nguyen found that plaintiff exhibited "moderately reduced" range of motion in her left ankle; paresthesia along the medial left ankle; and positive anterior drawer of the left knee.  (*Id.* 349.)  In light of these objective findings, Dr. Nguyen opined that he expected plaintiff:  could walk, stand, and sit up to 2 hours;  would have limitations in lifting – "less than 10 pounds at all times"; should be restricted to occasional stair climbing, kneeling, and crawling.  (*Id.*)

The ALJ did not include all of the limitations assessed by Dr. Nguyen in her articulation of plaintiff's RFC.  Instead, the ALJ rejected Dr. Nguyen's assessment that plaintiff is unable to lift 10 pounds or more and could walk, stand, and sit for no more than 2 hours.  (*Compare* A.R. 30 *with id.* 349.)  The ALJ explained that Dr. Nguyen's assessed limitations were overly restrictive given "the minimal medical treatment in the record, the objective evidence of near anatomic alignment of the left leg and foot fractures, [and] the lack of evidence of any hardware failure." (A.R. 31.)  The ALJ added "[plaintiff] recovered well following treatment of the left leg and foot fractures.  She had union of the fracture and postoperative x-rays showed good alignment and stable hardware . . . .  Dr. Atkinson

9

reported only minor postoperative findings following treatment of the fractures and did not assess any functional limitations." (*Id.*)

As stated above, "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill*, 698 F.3d at 1159 (quoting *Regennitter*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). The ALJ's reasons for rejecting Dr. Nguyen's opinions, *i.e.*, plaintiff's minimal treatment in the record, the objective evidence of near anatomic alignment of the left leg and foot fractures, and the lack of evidence of any hardware failure, do not satisfy this standard.

### 1. The Medical Treatment Evidence.

First, plaintiff's minimal medical treatment is not a legitimate reason supported by substantial evidence to reject Dr. Nguyen's opinions because, as discussed above, the record indicates that plaintiff's mental health impairments made it difficult for her to leave the home and to schedule and keep medical appointments. (A.R. 351.) It further indicates that plaintiff was "avoiding hospitals" after having spent so much time in them following her motor vehicle accident in 2005. (*See id.* 344.)

Additionally, although minimal, the treatment evidence in the record appears to bolster Dr. Nguyen's opinion. On February 1, 2012, Dr. Joseph Paul Atkinson examined plaintiff at Kaiser Permanente and noted that he "suspect[s] [plaintiff] is developing arthritis changes in the ankle, post-surgical." (A.R. 345.) Although Dr. Atkinson did not assess any functional limitations at that visit, he referred plaintiff for further examination. (*Id.*) In a radiology report on the same date, Dr. Jun Wu observed postoperative changes in plaintiff's left ankle. (*Id.* 337.) This evidence, while minimal, does not contradict Dr. Nguyen's assessment of limitations and, instead, appears to be consistent with it. *See Lester v. Chater*,

81 F.3d at 833 ("The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretations, of test results, but also to his subjective judgments.")  Accordingly, the treatment evidence is not a legitimate reason supported by substantial evidence for discounting Dr. Nguyen's assessment of plaintiff's physical limitations.

## 2.  Evidence Of Anatomic Alignment And No Hardware Failure

The ALJ's second reason for discounting Dr. Nugyen's opinion – her "near anatomic alignment of the left leg and foot fractures, [and] the lack of evidence of any hardware failure" – is also not legitimate.  The ALJ appears to be drawing a medical conclusion that, because the bones in plaintiff's foot and ankle were "near anatomic" in their alignment post-surgery and there was no evidence that the hardware holding her foot together had failed, she was able to lift 20 pounds occasionally and 10 pounds frequently and walk, stand, and sit for more than two hours – despite Dr. Nguyen's determination to the contrary.

It is well-settled that an ALJ may not render his or her own medical opinion or substitute her own diagnosis for that of a physician.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony that he took a road trip); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").  Accordingly, the ALJ erred by making a medical assessment that contradicted Dr. Nguyen's and had no support in the record.

11

Thus, the ALJ failed to articulate legitimate reasons supported by substantial evidence for discounting Dr. Nguyen's opinion. On remand, the ALJ must assess Dr. Nguyen's opinion in conformity with the governing legal standards, and, if appropriate, seek additional medical evidence to determine whether plaintiff is under a disability as defined by the Social Security Act.

**B. The ALJ Improperly Ignored The Opinion Of Dr. Funkenstein.**

On November 7, 2012, D. Funkenstein, M.D., the State Agency physician, conducted a review of plaintiff's medical records and determined that plaintiff is moderately limited in her ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (A.R. 115-16.) The ALJ determined that plaintiff is "limited to jobs involving predictable routines and usual workplace demands," but included none of the other limitations assessed by Dr. Funkenstein. (*Id.* 30.) The ALJ did not address or mention Dr. Funkenstein's opinion in her unfavorable decision. (*See generally id.* 27-33.)

Although the opinion of a reviewing physician who has never examined the claimant is not usually entitled to great weight, the ALJ must consider the findings and opinions of State agency physicians and psychologists and, "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §§ 404.1527(e)(2)(i)-(ii), 416.927(e)(2)(i)-(ii). Here, however, the ALJ did not mention Dr. Funkenstein's opinion or articulate the weight given it, despite the absence of a treating source opinion. Thus, under the agency's own regulations, the ALJ's erred by failing to explicitly consider Dr.

Funkenstein's opinion, and given the ALJ's flawed evaluation of the medical evidence of plaintiff's mental impairments more generally, the error was not harmless.

### III.     The ALJ Improperly Evaluated Plaintiff's Credibility.

Plaintiff's final contention is that the ALJ improperly evaluated her credibility. Plaintiff was barred from attending the hearing in person and did not testify telephonically, despite the ALJ's repeated attempts to contact her. (A.R. 30.)  However, on February 21, 2012, plaintiff completed an Adult Function Report, in which she made the following allegations regarding her symptoms and limitations. (*Id.* 237.)  She stated that she is unable to "walk long distances, stand for longer periods of time, and lift heavy objects" and that, when she tried to work, she experienced pain and swelling that immobilized her several days. (*Id.* 237.)

Plaintiff also stated that, in the course of a day, she:  prepares her own meals, each of which takes no longer than 20 minutes to cook; feeds her dog twice a day; stretches and, when able, takes her dog for a short walk; reads and "seek[s] out alternate means of supporting [her]self"; "tr[ies] to go to a music or art show when [she feels] able"; and takes a hot bath to relax muscle spasms. (A.R. 238-39.)  "[M]ainly [she] do[es] activities that don't require movements, like reading and watching TV." (*Id.* 238.)  Plaintiff's friends and family help her walk her dog to make sure they both get some exercise. (*Id.*)  She stated that her walks are one mile long with 5-20 minute rest breaks every quarter mile. (*Id.* 242.)  Plaintiff stated that pain in her knee and foot make it difficult for her to sleep. (*Id.* 238.)  She manages her household chores by splitting them into 20 minute increments per day. (*Id.* 240.)  One day a week she gets a ride to the grocery store where she shops for about 20 minutes. (*Id.* 240.)  She also goes to the library twice a week and to the doctor's office 2-5 times per month. (*Id.* 241.)

1   An ALJ must make two findings before determining that a claimant's pain or
2   symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102
3   (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented
4   objective medical evidence of an underlying impairment which could reasonably be
5   expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504
6   F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not
7   determined that the claimant is malingering, the ALJ must provide specific, clear and
8   convincing reasons for rejecting the claimant's testimony regarding the severity of the
9   claimant's symptoms." *Id.* In doing so, the ALJ must "specifically identify the testimony
10   [from the claimant that] she or he finds not to be credible and . . . explain what evidence
11   undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan*, 246 F.3d at
12   1208). "General findings are insufficient." *Brown-Hunter*, __ F.3d __, 2015 WL 4620123,
13   at *4 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Further, "subjective
14   pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by
15   objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)
16   (emphasis added) (citation omitted).

18   Here, the ALJ determined that plaintiff's medically determinable impairments could
19   reasonably be expected to cause the alleged symptoms but plaintiff's credibility was
20   "severely undermined by her failure to testify at either hearing, the lack of physical and
21   mental health findings, the lack of significant treatment for pain relief, the lack of any mental
22   health treatment, and her acknowledgement in the record that she was engaged in numerous
23   activities of daily living." (A.R. 31.) Without any additional explanation, the ALJ
24   concluded that plaintiff's "statements concerning the intensity, persistence, and limiting
25   effects of these symptoms are not entirely credible." (*Id.*) The ALJ did not "specifically
26   identify the testimony [she] finds not to be credible and . . . explain what evidence
27   undermines the testimony." *See Treichler*, 775 F.3d at 1102.

28

14

Because the ALJ made only general findings regarding plaintiff's credibility as a whole and did not "specifically identify the testimony [she] found not credible," the Court cannot perform a meaningful review of the ALJ's adverse credibility determination. *Cf. Treichler*, 775 F.3d at 1102-03; *Holohan*, 246 F.3d at 1208. It may well be that the ALJ's assessment of plaintiff's credibility is correct – and the Court's review of the record suggests that some of plaintiff's statements to the agency, her treating physicians, and the medical sources were inconsistent[3] – but "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Treichler*, 775 F.3d at 1102 (citing *S.E.C. v. Chenery Corp*, 318 U.S. 80, 87 (1943)). Thus, on remand, the ALJ must reassess plaintiff's credibility in addition to re-determining whether plaintiff has a "severe" mental impairment for the purposes of step 2 of the sequential analysis and a reevaluating the opinions of Drs. Palmer, Nguyen, and Funkenstein. If the ALJ again determines that plaintiff's subjective symptom allegations are not credible, the ALJ must "identify what parts of [plaintiff's] testimony were not credible" and articulate specific, clear and convincing reasons why. *See Treichler*, 775 F.3d at 1102-03.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[3]     The Court is particularly troubled by plaintiff's statements in the Adult Function Report that she goes to a doctor's office two to five times a month (A.R. 241) and received prescriptions for a brace and a cane in 2011 and 2012 (*id.* 243) because neither statement is substantiated by the medical record.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: September 21, 2015

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE